Anna LIEBMAN et al., Plaintiffs,

v.

J. W. PETERSEN COAL & OIL CO.
et al., Defendants.

NO. 2 CHICAGO DWELLINGS
ASSOCIATION, a not for profit
corporation, Plaintiff,

v.

CHICAGO COAL MERCHANTS ASSOCI-
ATION et al., Defendants.

5120 HARPER BUILDING CORP. et
al., Plaintiffs,

v.

CHICAGO COAL MERCHANTS ASSOCI-
ATION et al., Defendants.

Max SCHORVITZ et al., Plaintiffs,

v.

J. W. PETERSEN COAL & OIL CO.
et al., Defendants.

LA SALLE NATIONAL BANK, as Trus-
tee under Trust No. 11444, Plaintiff,

v.

CHICAGO COAL MERCHANTS ASSOCI-
ATION et al., Defendants.

The STATE OF ILLINOIS et
al., Plaintiffs,

v.

J. W. PETERSEN COAL & OIL CO.
et al., Defendants.

Nos. 71 C 1340, 71 C 1345, 71 C 1348,
71 C 2546, and 71 C 2548.

United States District Court,
N. D. Illinois, E. D.

May 29, 1973.

Robert S. Atkins, Robert F. Coleman, Freeman, Freeman & Atkins, Ltd., Chicago, Ill., for the State of Ill., and others.

Lowell E. Sachnoff, Joseph Gordon, Sachnoff, Schrager, Jones & Weaver, Ltd., Chicago, Ill., for Max Schorovitz, and others.

Perry Goldberg, Gig Specks, Jerome Wald and Joseph Cooper, Chicago, Ill., for 5120 Harper Building Corp., and others.

Aram Hartunian, Charles Pressman, Pressman & Hartunian, Chicago, Ill., for Anna Liebman and others.

William J. Harte, Kevin M. Forde and John J. Sullivan,* Chicago, Ill., for No. 2 Dwellings Assoc. and La Salle National u/T No. 11444.

Fred H. Bartlit, Don H. Reuben, Thomas A. Gottschalk, Michael W. Coffield, and Gerald E. Beatty, Kirkland & Ellis, Chicago, Ill., for J. W. Petersen Coal & Oil Co., F. D. Carpenter Coal Co., Mogg Coal & Oil Co., M. F. Hughes Coal & Oil Co., Hugh E. Petersen, William Harper, George R. Saunders, and Thomas J. Hughes, Jr.

Lewis W. Schlifkin, Schlifkin & Berman, Chicago, Ill., for Fidelity Coal Co., Oberheide Coal & Oil Co., Glendale Coal & Material Co., Polonia Coal Co., Samuel L. Nashban, Leonard Oberheide, Edward Dunne and Edward Pazdan.

Harvey J. Barnett, Rosenthal & Schanfield, Chicago, Ill., for Geo. Lill Coal Co., Rutter Coal & Oil Co., Lillco, Inc., and Owen Reebie.

Irwin I. Zatz, Arvey, Hodes & Mantynband, Chicago, Ill., for Roth Adam Fuel Co., O'Keefe Bros. Coal Co., Edward L. Dorr, Robert W. Roth, James O'Keefe, and Barry O'Keefe.

James P. Chapman, Chicago, Ill., for Carroll Coal Co., Samuel Bellows, Dan Dores, Jr., Dan Dores.

John H. Morrison, Kirkland & Ellis, Chicago, Ill., for Crerar Clinch Coal Co., Dunn Coal & Oil Co., Orvil Cochran.

John C. Tucker, Rodney D. Joslin, Jenner & Block, Chicago, Ill., for Marquette Coal & Mining Co., William W. Robson, Jr.

James S. Gordon, Chicago, Ill., for Hefter Coal & Oil Co., and Lester Hefter.

William P. Kearney, Kearney & Phelan, Chicago, Ill., for Hediger Corp.

Robert C. Hultquist, Moriarty, Rose & Hultquist, Chicago, Ill., for Royal Fuel Corp.

Edward LeVine, Wayne & LeVine, Chicago, Ill., for Silver Creek Coal Co., R. Gordon Hinners, Edward Kureld and Milton Kausal.

J. Alfred Moran and Lawrence S. Wick, Witwer, Moran & Burlage, Chicago, Ill., for Torch Fuel Co.

James B. Rice and George P. Latchford, Latchford, Rice & O'Brien, Chicago, Ill., for Bigane Coal Co.

Dean Dickie, Aaron, Aaron, Schimberg & Hess, Chicago, Ill., for Harold Stein Fuel Co.

Charles J. Gallagher, Cahill & Gallagher, Chicago, Ill., for Bell-Cusack Coal Co.

James R. Mitchell, Masuda, Funai, Eifert & Mitchell, Chicago, Ill., for Koegel Coal Co.

Louis E. Siciliano, Glenwood, Ill., for Stackhouse Coal Co.

Angelo Ruggiero, Chicago, Ill., for Lester Coal Co., Inc.

George R. Bieber and Howard L. Fink, Chicago, Ill., for Gould Coal & Oil Co.

Donald J. O'Brien, Jr., O'Brien, Kerpec & Evans, Chicago, Ill., for Chicago Coal Merchants Ass'n.

Edward V. Scoby, George E. Sweeney and Charles V. Kralovec, Kralovec, Swee-

---

* Mr. Sullivan was appointed a Justice of the Appellate Court of Illinois effective April 1, 1973, and has not appeared or participated in these cases since that date.

ney, Marquard & Doyle, Chicago, Ill., for Joseph Sweeney and Joseph Lenz.

Henry T. Synek, Synek & Bishart, Chicago, Ill., for Henry Frerk & Sons.

Sol A. Hoffman, David A. Saunders and Richard A. Friedlander, Hoffman & Davis, Chicago, Ill., for Diamond Coal & Oil Co.

## MEMORANDUM OPINION

WILL, District Judge.

These six consolidated jury cases involve class actions brought against retail coal dealers in the Chicago area for damages resulting from alleged violations of the antitrust laws. The jurisdiction of this court is invoked under the provisions of Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15, 26). The complaints include allegations of an unlawful combination and conspiracy, the fixing of prices for both coal and labor, illegal division of markets, collusive bidding, concerted refusals to deal and reciprocal dealing, all of which constitute violations of Sections 1 and 2 of the Sherman Act. Plaintiffs seek the recovery of treble damages and an injunction prohibiting similar activity in the future.

While the first of these cases was filed on June 6, 1971, the complexity of the actions, as well as the fact that they were before three other judges of this court before reaching us, has resulted in the fact that determination as to the propriety of maintaining the actions as class actions, and, if so, designation of representative counsel were not made until early this year.

■ On October 5, 1972, at the first pretrial conference held before us, a group of defendants proposed a settlement to cover all class members' claims against these defendants. Claims against them constitute approximately 75% of the total alleged liability involved in these actions. The proposal was joined in by plaintiffs in two of the six actions, including the Attorney General of the State of Illinois. The terms of the proposal may be summarized briefly: claimants would receive a cash distribution of $1,000,000 and credits of $500,000 to be applied over a two-year period to future retail purchases of coal.

Counsel for plaintiffs in four of the six actions objected to the settlement proposal, arguing that they had not participated in the negotiations, that settlement was premature, and that the settlement itself was inadequate. Pursuant to the directives set forth in the Manual for Complex Litigation, the court ordered discovery to be taken and thereafter held hearings so as to determine whether or not the proposed settlement fell within the range of possible ultimate approval. All of the foregoing having been accomplished we now find that the settlement proposed is not within that range of fairness and reasonableness which would justify its formal submission to the plaintiff class followed by final hearings thereon, and therefore deny defendants' motion for preliminary approval of it.

■ Rule 23(e) of the Federal Rules of Civil Procedure states: "A class action shall not be dismissed or compromised without the approval of the court . . .." The reason for requiring court approval of a settlement in a class action, which is unnecessary in most other types of civil litigation, is because the court serves as the guardian of the interests of the absent members of the class. Particularly where, as here, the settlement is negotiated before the designation of classes and appointment of class representatives, "the court must be doubly careful in evaluating the fairness of the settlement to plaintiff's class." *Ace Heating & Plumbing Company v. Crane Company,* 453 F.2d 30, 33 (3rd Cir. 1971).

■ It is well settled that the burden of convincing the court of the fairness of

the settlement rests on its proponents. See *Norman v. McKee,* 431 F.2d 769 (9th Cir. 1970). We think that burden has not been preliminarily met here. While cases speak of an initial presumption that a proposed settlement is fair and reasonable due to the ability and experience of the negotiating attorneys on both sides, *e. g., Trainor v. Berner,* 334 F.Supp. 1143 (S.D.N.Y.1971), and of the valid caveat that the court is not to substitute its business judgment for that of the parties, *e. g., Ace Heating, supra,* it must be remembered that counsel for plaintiffs in four of the six consolidated actions are objecting to the proposed settlement here. Their "business judgment" as well as their objections to the proposal are also entitled to weight. See *Saylor v. Lindsley,* 456 F.2d 896 (2nd Cir. 1972). Moreover, in the final analysis, the responsibility for determination of the reasonableness and fairness of a settlement proposal rests with the court. There is no purpose served by sending out a proposed settlement to class members if it does not appear preliminarily to be within the range of an approvable proposal.

■ Before going into some of the specific objections to the proposed settlement which lead us to conclude that it is not within that range, one further point in terms of the legal framework from which the court must view such proposals needs to be mentioned. It is a truism that the purpose of settlements is to avoid the expense and uncertainty of trying difficult issues of fact and law. However, the primary criterion for the court in evaluating the fairness and adequacy of a proposal is an informed estimate of the probabilities of both liability and damages. See *State of West Virginia v. Chas. Pfizer & Co.,* 440 F.2d 1079 (2nd Cir. 1971), *cert. denied sub nom. Cotler Drugs, Inc. v. Chas. Pfizer & Co.,* 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971). Only by making such an estimate can the court decide whether the concrete present and future benefits held forth by the settlement without the expense and delay of a trial and subsequent appellate procedures are worth the relinquishment of plaintiffs' claims.

Obviously, defendants do not concede liability in these actions, and, in fact, expressly disavow any liability in the settlement proposal itself. It is also true that the state criminal anti-trust action brought against most of these same defendants was not successful. However, based on the nature of the allegations and on the information that has been adduced in the discovery proceedings so far, it appears that the probability of liability is substantial. While we do not minimize the problems of proof faced by plaintiffs, it appears they have at least a prima facie case. Counsel for all the plaintiffs, including the Attorney General of Illinois, without regard to whether they favor or oppose the proposed settlement agree on this estimate.

In light of the relative strength of plaintiffs' case, the estimate of damages recoverable in a successful trial becomes important to the evaluation of the proposal, as this is what plaintiffs will probably forego should the settlement be approved and accepted. During the course of the preliminary hearings, damage estimates were projected by three groups: settling defendants, the office of the Attorney General of the State of Illinois, and objecting plaintiffs. Not surprisingly, these projections of single damages vary widely, ranging from a low of approximately 1 million dollars (representing defendants' after tax profits in the years in question), to a high of around 5 million dollars. Based on our examination of the economic data presented by all three groups, and viewing it most favorably towards defendants, the minimum single damage figure appears to be in the vicinity of $2,200,000. As plaintiffs would be entitled to treble damages if defendants were found liable, this figure would become $6,600,000. Even taking into account the need to discount this figure to reflect the expense and length of time required to try

and appeal the case, as well as the possibility of a judgment in favor of defendants, we find the proposed settlement of $1,000,000 in cash and $500,000 in future credits inadequate, both in terms of plaintiffs' legitimate claim of entitlement and in terms of the policies underlying the anti-trust laws.

■ Defendants argue very strongly that the coal industry in Chicago is a dying one, that this industry decline must be considered, and that the proposed settlement is all the defendants can pay without facing bankruptcy. They urge, therefore, that it should be submitted to class members, whether or not it could otherwise be demonstrated to be fair and reasonable. While we sympathize with the plight of various defendants and recognize that their financial health is relevant in evaluating a settlement proposal, the significant consideration for our purposes here is their actual ability to sustain the costs of both a trial and adverse judgments. On this point, defendants have not refuted objecting plaintiffs' presentations that, in fact, defendants are clearly able to withstand the loss of a significantly greater sum than is proposed in the settlement agreement. While their financial conditions vary, the aggregate net worth of the settling defendants, based on the latest available financial data, appears to exceed $12,000,000.

Counsel for one of the plaintiff proponents of the settlement argues that the fairness and adequacy of the proposal should be based on an estimate of the percentage of claimants who can actually be expected to file meritorious claims. He contends that, based on experience, it can be assumed that approximately 20–40% of the holders of claims (members of the class) will file claims. On this basis, he argues, the settlement fund would provide a recovery to anticipated actual claimants closely approximating single damages, if not more, and is therefore fair and reasonable even though he estimates that single provable damages will be at least $3,600,000.

We reject this approach for several reasons. First, a settlement on this basis would mean that the defendants would retain a substantial portion of any illegal gains rather than be penalized for their violations of the anti-trust laws as Congress clearly intended by its provision for treble damages. Counsel concedes this but urges that it is an established historical economic fact in the United States that anti-trust violators do profit from their illegal activities even if those activities are discovered and suits under the anti-trust laws are brought against them. He cites examples of other settlements in anti-trust cases which, he says, demonstrate the accuracy of this conclusion.

■ Each settlement proposal must, of course, be evaluated on its own relative merits as to the probabilities of liability, the range of probable damages and other relevant factors. Accordingly, we believe that it is impossible to establish any such broad, sweeping proposition. In any event, we do not believe that the fairness of any settlement proposal should be determined on the assumption that the retention by defendants of some of their illegal profits is the norm and that the anti-trust laws are, therefore, ineffective.

Second, there is no way of determining in advance the aggregate amount of claims which will be filed and asserted in any given case. The members of the plaintiff class here are not geographically dispersed throughout the country but are all residents of the Chicago area. Many of them are large users of coal with substantial claims. What percentage of the total potential claims will be presented is simply impossible to determine at this time. Finally, there is nothing in the language or the history of the anti-trust laws which suggests that single recovery of the damages sustained by victims of anti-trust violations who file claims is the proper measure of their recovery. The provision for treble damages is obviously contrary to such a conclusion.

We recognize, of course, that a settlement of less than minimum single damages may well be appropriate in a given case. If the issue of liability is speculative, if the defendants are financially incapable of paying more or other relevant factors warrant it, such a settlement may be fair and reasonable. On the basis of the information presented to us, this is not such a case.

Another objection to the present proposal is its failure to make any estimate of attorney's fees and other expenses or to make any clear provision for the payment of these fees and expenses. Paragraph 10 of the Agreement provides only that "defendants intend to request the Court to award such fees from the settlement fund," and, conversely, that "the Illinois Attorney General intends to ask that any such attorney's fees be paid by defendants over and above the settlement fund."

The Manual for Complex Litigation expressly condemns arrangements which provide for the payment of fees by defendants over and above the settlement amount, since the effect of such an arrangement has been, on a number of occasions, to circumvent the court's power and responsibility to pass upon the reasonableness of the amounts to be paid to plaintiffs' counsel. § 1.46. On the other hand, if fees and expenses are to come out of the proposed settlement fund, the amount by which plaintiffs' recovery will be diminished is highly relevant to the determination of the fairness of the settlement to the plaintiff classes. The provisions of this agreement represent the worst of both worlds since they leave open both the amount and the source of payment. No class member could possibly calculate the amount to be distributed to all members of the class, much less his proportionate share thereof.

In summary, the proposed settlement of $1,000,000 in cash and $500,000 in future credits is substantially less than probable minimum single damages in these treble damage anti-trust actions. In addition, no provision with respect to the amount and source of payment of fees and expenses is even tentatively specified. On the basis of the information before the court as to the probabilities of liability and the range of possible damages, together with the impossibility of any class member determining what his probable participation in the settlement would be, we find that it is not appropriate in its present form to be submitted to class members for their consideration.

An appropriate order will enter.