Norman P. MILLER and Kenneth Rubenstein, Plaintiffs-Appellees,

v.

REPUBLIC NATIONAL LIFE INSURANCE COMPANY et al., Defendants-Appellees,

v.

Sy C. SUSSMAN and Ruth L. Sussman, Movants-Appellants.

No. 76–3740.

United States Court of Appeals, Fifth Circuit.

Sept. 19, 1977.

Rehearing and Rehearing En Banc Denied Oct. 20, 1977.

Harry A. Young, Jr., Chicago, Ill., for Sussman, et al.

Kaye, Scholer, Fierman, Hays & Handler, New York City, Darrel E. Reed, Jr., William C. Harvin, John Held, Houston, Tex., for Rep. Nat'l Life Ins. Co.

Stuart D. Wechsler, New York City, for Miller & Rubenstein.

Robert G. Vial, Paul D. Schoonover, Vial, Hamilton, Koch, Tubb, Knox & Spradley, Dallas, Tex., for W. L. Pickens.

Morris Harrell, Dallas, Tex., Cahill, Gordon & Reindel, New York City, for Peat, Marwick, et al.

D. L. Case, Jack Pew, Jr., Dallas, Tex., for J. D. Francis et al.

Samuel K. Rosen, Robert S. Schachter, New York City, for Miller & Rubenstein and for Realty Equities Corp.

James E. Coleman, Dallas, Tex., for Beasleys, Brady, et al.

Tenzer, Greenblatt, Fallon & Kaplan, New York City, for Hilary H. Evers.

Milbank, Twee, Hadley & McCloy, New York City, for W. N. Stannus, et al.

Nickerson, Kramer, Lowenstein, Nessen, Kamin & Soll, New York City, for Security Natl. Bk.

Before COLEMAN, Circuit Judge, KUNZIG,* Judge, and GEE, Circuit Judge.

COLEMAN, Circuit Judge.

In an order dated August 20, 1976, the District Court approved the settlement of class actions which alleged violations of Sections 10(b), 13, 14, 18, and 20(a) of the Securities Exchange Act of 1934; Securities and Exchange Commission's Rules 10b–5 and 13a–1 and Regulation 14a–9, Section 17(a) of the Securities Act of 1933; and principles of common law. Sy C. Sussman and Mrs. Ruth L. Sussman, the only two of 13,000 class members to object to the settlement, appeal. We affirm.

The challenged agreement is between a class of shareholders and former shareholders of Republic National Life Insurance Company on the one hand and the Company on the other. Republic is a life and health insurance company located in Dallas, Texas. Beginning in 1968 and continuing through 1974, Republic became deeply involved fi-

* Judge of the United States Court of Claims, sitting by designation.

nancially with Realty Equities Corporation of New York ("Realty"). Through the years of its involvement, in a series of transactions which totalled in excess of $100,000,000, Republic made loans to and purchases from Realty. In the later years Realty began losing money heavily. In an effort to protect its investments with Realty and to cover up its overextension on those investments, Republic began buying and trading property with Realty and Realty affiliates for the purpose of making it appear that profits were being experienced from the operation. The situation became worse instead of better. Finally, in early 1973, the Securities and Exchange Commission ("SEC") began an investigation of Realty and its transactions with Republic.

In February, 1974, the SEC filed a complaint against Republic alleging that from 1970 through 1974 its financial statements were false and misleading in certain respects. The basis of the complaint was that Republic and Realty had engaged in a series of complex transactions which had not correctly been reflected in the financial statements of either company. It was also charged that many of these transactions were artificial and designed to conceal losses in valuable investments by the parties, as well as to conceal the growing concentration of investments by Republic in Realty during the period of 1968–73. Republic subsequently signed a consent decree with the SEC to refrain from such further activity.

In the wake of the SEC action-investigation, some seventeen class and derivative actions were filed by stockholders and former shareholders against Republic. A hearing was held before the Panel on Multidistrict Litigation to consolidate the actions for discovery and trial purposes. The actions with which we are presently concerned were assigned to the Honorable Milton J. Pollack, of the District Court for the Southern District of New York. Judge Pollack subsequently certified the causes for class action and allowed lead counsel to continue discovery. The class consisted of those who bought Republic stock between September 1, 1970 and February 7, 1974, as well as those who acquired Republic stock in the merger with Pacific National Life in 1971.

After several months of discovery, deposing over 70 witnesses and parties and reviewing thousands of documents, lead counsel for the plaintiff class reached a settlement agreement with counsel for Republic.

On July 19, 1976, the settlement agreement was announced to the Court. The Court directed that a hearing should be held on August 18, 1976, Rule 23(e), F.R.C.P., to determine the merits of the settlement agreement for possible approval. At that hearing anyone wishing it would be excluded from the class and objections from members of the class would be heard. The Court directed that notices should be sent to all members of the class, informing them of their options and rights regarding the proposed settlement agreement.

At the August 18 hearing the appellants appeared as the only shareholders to object to the settlement agreement. The Sussmans had filed one of the original suits against Republic but had been excluded by the Court as class representatives. Their counsel, however, had maintained access to discovery proceedings being carried on by the lead counsel.

The Sussmans sought to upset the settlement on two primary grounds: (1) the settlement procedures violated due process and (2) the settlement is unfair to the class in which they are members.

The objections were overruled, the settlement was approved, and the Sussmans appeal.

 Settlement agreements are "highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits". *Pearson v. Ecological Science Corp.*, 5 Cir. 1975, 522 F.2d 171; *D. H. Overmyer Co. v. Loflin*, 5 Cir. 1971, 440 F.2d 1213, *cert. denied*, 404 U.S. 851, 92 S.Ct. 87, 30 L.Ed.2d 90; *Florida Trailer and Equipment v. Deal*, 5 Cir. 1960, 284 F.2d 567. In class actions this policy must be coupled with the two-fold requirement that (1) there is no fraud or collusion in arriving at the settlement and (2) the settlement is

fair, adequate and reasonable, *Young v. Katz*, 5 Cir. 1971, 447 F.2d 431, 433; *Neuwirth v. Allen*, CCH Fed.Sec. L.Rep. ¶ 91,324, aff'd per curiam, 2 Cir. 1964, 338 F.2d 2.

■ The approval of settlements in class actions is left to the sound discretion of the district court. A decision to approve will not be disturbed on appeal unless it is clearly shown that the approval resulted from an abuse of discretion. *Young v. Katz, supra. See also West Virginia v. Chas. Pfizer & Co.*, 2 Cir. 1971, 440 F.2d 1079, *cert. denied sub nom., Cotler Drugs, Inc. v. Chas Pfizer & Co.*, 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115.

In *Protective Committee v. Anderson*, 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968), the Supreme Court stated: "[T]he judge should form an educated estimate of the complexity, expense, and likely duration of . . . litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *Id.* at 424, 88 S.Ct. at 1163. The Court further held that the likelihood of success if litigated and the probable rewards of that litigation should be weighed in the decision. *See also City of Detroit v. Grinnell Corp.*, 2 Cir. 1975, 495 F.2d 448, 455 (outlining the same criteria).

At the August 18 hearing, lead counsel for the plaintiffs submitted affidavits, not contradicted in any material manner, in support of the settlement. The District Court reviewed the affidavits and other evidence presented, which included a discussion of much of the Supreme Court criteria. In summary, the evidence and affidavits reflected that lead counsel for the class action plaintiffs had been involved in discovery for over two years, producing reams of depositions and documents. The settlement had been consummated after the counsel had become thoroughly familiar with the case. There was never a hint or intimation that the proposed settlement was fraudulent or collusive.

The weaknesses of the case were described by affidavit. The two Republic officers most involved in the Realty transactions had died and would not be available to testify. Their testimony was important in establishing the scienter required to prove a securities fraud violation. The appraisals Republic had been given in the past on the properties bought from Realty would be difficult to challenge because of reluctance of qualified appraisers to challenge the former opinions and because of the difficulty in valuing property as of years gone by. Lead counsel had great concern over trying this complex case before a jury because of the likelihood that a jury would become confused, leading to erratic results. Finally, lead counsel, an experienced and knowledgable securities class action attorney, stated in his affidavit, "I would be derelict in my duty if I did not recommend the settlement agreement for approval since, in my considered judgment, the settlement provides for a recovery equivalent to that which would have been awarded upon a plaintiff's verdict after a successful trial on liability".

■ The settlement award, compared to the risks of complex litigation, was considered by the District Court to be fair and reasonable. This view is supported by the evidence. Appellants put on no proof of substance dealing with the fairness or reasonableness of the settlement. There was no abuse of discretion by the District Court.

■ A second point of appeal is that the notice violated due process. Notice in a class suit must present a fair recital of the subject matter and of the proposed terms and must give the class an opportunity to be heard. *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The individual notices mailed to the class members described the litigation and summarized the proposed settlement terms. The notices also told of the time and place of the settlement hearing and the option of being excluded from the class.

■ The appellants argue that the notices did not give sufficient time for class members to respond to the settlement agreement if they wished to object. This

claim is without merit. There were almost four weeks between the mailing of the notices and the settlement hearing. Other than the Sussmans, *no* other class member came forward to object or to ask for more time to study the settlement or to request a continuance to prepare objections. The appellants had been a party to the proceedings from the beginning. The Court-prescribed timetable was not inconsistent with the time limits in other settlement cases nor does it appear to have bothered anyone else in the class. *Grunin v. International House of Pancakes*, 8 Cir. 1975, 513 F.2d 114, 121, *cert. denied*, 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (notice sent nineteen days prior to the settlement hearing); *see United Founders Life Ins. Co. v. Consumers Nat. Life Ins. Co.*, 7 Cir. 1971, 447 F.2d 647, 652 (24 day period between notice mailing and hearing was not questioned by the court as being improper).

The Judgment of the District Court putting an end, by appropriate settlement, to this litigation is

AFFIRMED.