724 F.2d 1149
 David RUIZ, et al., Plaintiffs-Appellees,
United States of America, Plaintiff-Intervenor-Appellee,
v.
Dan V. McKASKLE, Acting Director, Texas Department of
Corrections, et al., Defendants-Appellees,
v.
Samuel James JACKSON, et al., Movants-Appellants.
 No. 83-2039
Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 13, 1984.
 
 David Allen DuBose, pro se.
 Samuel James Jackson, pro se.
 Dennis J. Dimsey, Atty., Civil Rights Div., Walter W. Barnett, Wm. Bradford Reynolds, Asst. Atty. Gen., U.S. Dept. of Justice, Washington, D.C., for U.S.
 Richard E. Gray, III, Sp. Asst. Atty. Gen., Douglas M. Becker, Austin, Tex., for Texas Dept. of Corrections.
 William Bennett Turner, Donna Brorby, San Francisco, Cal., for plaintiffs-appellees Ruiz et al.
 Appeal from the United States District Court for the Southern District of Texas.
 Before CLARK, Chief Judge, RUBIN and JOLLY, Circuit Judges.
 PER CURIAM:
 
 
 1
 Samuel Jackson is an inmate at the Ellis Unit of the Texas Department of Corrections (TDC) and is a class member in this class action law suit which challenged conditions in the Texas prisons. He appeals from the district court's approval of a Stipulated Modification to the remedial decree entered by the district court. Holding that the inmates received adequate notice of the Stipulated Modification and that the district court did not abuse its discretion in approving the Stipulated Modification, we affirm.
 
 I.
 
 2
 In 1972, inmates of the Texas Department of Corrections filed this civil rights action which challenged the conditions of their confinement. In 1974, the district court certified the suit as a class action and permitted the United States to intervene. During a trial which lasted for almost a year, the district court heard extensive testimony regarding the insufficiencies of the civilian security force and abuses resulting from the use of prisoners called "building tenders" as auxiliary guards. In its opinion, the district court held that TDC's failure to provide reasonably adequate security violated the Eighth Amendment's proscription against cruel and unusual punishment. It also held that the unwarranted brutality by TDC's staff (including building tenders) in the severely overcrowded prison units violated the Eighth and Fourteenth Amendments. Ruiz v. Estelle, 503 F.Supp. 1265, 1303, 1305 (S.D.Tex.1980).
 
 
 3
 Part II A of the district court's remedial decree ordered that TDC more than double its staff-prisoner ratio to one uniformed staff member for every six prisoners. It specified how TDC was to deploy the staff in prisoner living areas, permitting TDC to alter the deployment pattern only upon a showing that the "prescribed staffing pattern is unnecessary in the particular instance." Part II B ordered that TDC file a plan and timetable for the training and retraining of security officers. Part II C required TDC to file and enforce appropriate standards for the use of force by TDC personnel against prisoners. Part II D required the abolition of building tenders and prohibited the use of prisoners in positions of authority over other prisoners. It also ordered TDC to set up a rotation system for prisoner jobs involving the performance of the building tenders' duties. Part II E required TDC to file and follow a classification plan which would assure that abuse of prisoners by other prisoners would be minimized.
 
 
 4
 TDC appealed all provisions of Part II of the district court's remedial decree except Part II C. See Ruiz v. Estelle, 679 F.2d 1115, 1164-65 (5th Cir.1982). On TDC's motion for a stay pending appeal, this court stayed the district court's order that TDC attain first an 8:1 and finally a 6:1 prisoner staff ratio. It declined to stay the decree's provision which required TDC to reach a 10:1 ratio, noting that TDC had essentially done so by the time it filed the motion. Stating that "TDC has satisfied us of the likelihood of its success on the merits...," this court also stayed the provision of the decree specifying how TDC staff should be deployed. Ruiz v. Estelle, 666 F.2d 854, 861 (5th Cir.1982). This court also determined that TDC was likely to prevail on its challenge to the part of the decree which ordered the rotation of building tender duties, and stayed that provision as well. Ruiz v. Estelle, 650 F.2d 555, 575 (5th Cir.1981). Finally, this court stayed the provision of Part II D of the decree which prohibited TDC from permitting even "properly supervised" inmates from possessing cell keys. Ruiz v. Estelle, 666 F.2d at 861.
 
 
 5
 In October 1981, during the pendency of TDC's appeal, the office of the Special Master in this case filed a report concerning TDC's compliance with Part II D of the decree which prohibited the delegation of authority to building tenders. An evidentiary hearing on TDC's objections to the report, and its motion to discharge the Special Master and his staff, began on March 13, 1982. After two weeks, the district court adjourned the hearing and ordered the parties to attempt to settle the building tender issue.
 
 
 6
 On April 14, 1982, the parties presented the district court with a Stipulated Modification of Parts II A and II D of the decree. The Stipulated Modification prohibited TDC from allowing prisoners to have any position of authority, assisting in counting other prisoners, possession of weapons, escorting other prisoners, determining or influencing cell assignments, or having access to another prisoner's medical or institutional records. It temporarily permitted TDC to allow closely supervised prisoner "turnkeys" to possess a key for the time it takes to open a door or gate and permanently permitted turnkeys to operate doors and gates through which prisoners do not ordinarily pass, as long as there is no security reason to post an officer at such portals. The Stipulated Modification provided for a different method of dismantling the "building tender" system. This method involved the disqualification of many of the former building tenders from prison jobs which encompassed building tender duties. Finally, in the course of nineteen detailed pages, the Stipulated Modification spelled out precisely what inmates may or may not do in a way that the one page provision of the original decree did not. On April 21, 1982, the district court tentatively approved the Stipulated Modification, subject to the requisite Rule 23 proceedings.
 
 
 7
 Notice to the class was given by (1) placing five copies of the Stipulated Modification and a summary of its contents in the "Writ Room" of each TDC unit; (2) publishing the Stipulated Modification and a summary of its contents in the prison newspaper; and (3) posting notices in the inmate units advising of the availability of the Stipulated Modification and the summary of its contents. Class members were given thirty days to file objections. Approximately one percent of the class, including the appellant here, Samuel Jackson, filed objections.[1] As the district court stated, "the central thread of the objections is skepticism about [TDC's] willingness to comply with the terms of the settlement."
 
 
 8
 After a hearing on the objections, the district court approved the Stipulated Modification. It concluded that "[t]he terms of the modification are fair and reasonable, and protect, in all respects, the rights of the plaintiff class" and that the settlement of the building tender issue "is in the best interest of all parties to this action."
 
 
 9
 Jackson appeals from the district court's approval of the Stipulated Modification. His objections ultimately create two appellate issues: (1) whether the district court abused its discretion in approving the Stipulated Modification; and (2) whether the inmates received adequate notice of the terms of the settlement.
 
 II.
 
 10
 In Cotton v. Hinton, 559 F.2d 1326 (5th Cir.1977), this court determined the proper standards for judicial review of a proposed compromise or settlement. As this court said, "the cardinal rule is that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." The court's assessment of the fairness, adequacy and reasonableness of the proposal "should focus on the terms of the settlement." Id. at 1330. In effect, the district court evaluates the terms of the compromise in relation to the likely benefits of a successful trial. Above all, the court must be mindful that "inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." Id, quoting Milstein v. Werner, 57 F.R.D. 515, 524-25 (S.D.N.Y.1972). In the absence of fraud or collusion, the trial court "should be hesitant to substitute its own judgment for that of counsel." Id. This court will not overturn the district court's ruling absent the court's clear abuse of discretion. Id. at 1329; see Miller v. Republic National Life Insurance Co., 559 F.2d 426, 428-29 (5th Cir.1977).
 
 
 11
 The district court did not abuse its discretion in approving the Stipulated Modification. Although the district court did not explain in detail its reason for approving the Stipulated Modification, the reasons favoring approval are evident. First, a review of the Stipulated Modification reveals that it changed the original decree in only one material respect. Where the original decree had virtually banned building tenders, the modification permits closely supervised inmate turnkeys to temporarily possess keys in order to open and close doors. It also authorizes turnkeys to "operate doors and gates through which inmates do not normally pass," provided that the passageway is not a "primary security point." In return for this slight modification, the Stipulated Modification specifies in great detail what prisoners may or may not do. This specificity makes it impossible for TDC to allow building tenders to continue to function as inmate guards and allows the Stipulated Modification to be more easily enforced and monitored than the general terms of the original decree.
 
 
 12
 Second, when the parties negotiated and the district court approved the Stipulated Modification, this court had already stayed, pending appeal, the provisions of Part II A and II D of the original decree which prohibited the use of inmate turnkeys. In doing so, it found that TDC was likely to prevail on its appeal of the stayed provisions.[2] In view of this court's stay of the original decree, which is strong evidence that an absolute ban of inmate turnkeys would not stand on appeal, the Stipulated Modification is an entirely fair and reasonable settlement. In conclusion, the district court did not abuse its discretion in approving the compromise agreement contained in the Stipulated Modification. In re Corrugated Container Antitrust Litigation, 643 F.2d 195, 211-213 (5th Cir.1981); Cotton v. Hinton, 559 F.2d at 1330-32; see In re Chicken Antitrust Litigation, 669 F.2d 228, 238 (5th Cir.1982).
 
 III.
 
 13
 In arguing that the inmates received ineffective assistance of counsel, Jackson raised the issue of adequate notice. Jackson's argument, given a liberal interpretation, is that TDC failed to furnish a Spanish language version of the notice and that the English version was deficient because the inmates read English at only a fifth-grade level.
 
 
 14
 The issue of notice in a Rule 23(b)(2) class action must focus only on whether the district court abused its discretion in giving notice in the manner it chose. Fowler v. Birmingham News Co., 608 F.2d 1055, 1059 (5th Cir.1979).
 
 
 15
 Here, there was no defect in the form of notice employed. The parties agreed upon the manner in which notice was to be given. In addition, a hearing was held at which those inmates who disapproved of the Stipulated Modification could make their objections to the district court.
 
 
 16
 Contrary to Jackson's contentions, notice was given in Spanish. Moreover, the English language version fairly recited the agreement's terms and did not employ unnecessary legalisms. In short, the inmates were given a "fair recital" of the terms of the Stipulated Modification and were given an opportunity to object and be heard. See Miller v. Republic National Life Insurance Co., 559 F.2d at 429. Accordingly, the district court did not abuse its discretion in giving notice in the manner it chose.
 
 
 17
 For the above and foregoing reasons, the district court's approval of the Stipulated Modification is
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 Signatures of 344 inmates were affixed to the objections. Approximately 33,000 prisoners populated the various units of TDC at the time
 
 
 [2]
 This court did, in fact, vacate every provision of the district court decree that it had stayed pending appeal, except those modified by the Stipulated Modification. See Ruiz v. Estelle, 679 F.2d at 1164-65; Ruiz v. Estelle, 666 F.2d at 861-62; and Ruiz v. Estelle, 650 F.2d at 577-78