848 F.2d 515
 1989 A.M.C. 2377
 Wayne T. TANKSLEY, Plaintiff,
v.
GULF OIL CORP., et al., Defendants.
CHEVRON U.S.A., INC., Formerly Gulf Oil Corp.,
Defendant/Third-Party Plaintiff-Appellant,
v.
SERVICES, EQUIPMENT & ENGINEERING, INC., Third-Party
Defendant-Appellee.
 No. 87-3185.
 United States Court of Appeals,
Fifth Circuit.
 June 21, 1988.
 
 Robert B. Acomb, Jr., New Orleans, La., for defendant/third-party plaintiff-appellant.
 Gary M. Zwain, New Orleans, La., for third-party defendant-appellee.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before POLITZ, KING and SMITH, Circuit Judges.
 POLITZ, Circuit Judge:
 
 
 1
 Chevron U.S.A., Inc., formerly Gulf Oil Corporation, appeals the summary judgment dismissal of its third-party indemnification claim against Services, Equipment and Engineering, Inc. (SEE), contending that the Louisiana Oilfield Indemnity Act of 1981, La. R.S. 9:2780, permits recovery of its costs of defense of the demand filed by Wayne T. Tanksley. Guided by a recent interpretation of the Oilfield Indemnity Act by the Louisiana Supreme Court, and a subsequent decision by this court, for the reasons assigned we affirm.
 
 Background
 
 2
 Tanksley, a toolpusher for SEE, was seriously injured while performing workover duties on a Chevron platform in the Gulf offshore Louisiana. Tanksley sought recovery from Chevron and South Coast Welding Corporation, another contractor working on the platform, alleging that they were negligent. Chevron invoked an indemnity provision in the workover contract[1] and filed a third-party complaint against SEE.
 
 
 3
 SEE sought summary judgment dismissal of the third-party claims, contending that the Oilfield Indemnity Act nullified the indemnity provision and barred Chevron's recovery. Chevron opposed the motion and informed the district court that the Louisiana Supreme Court had accepted this court's certification of questions relative to the interpretation to be given to the Oilfield Indemnity Act. Meloy v. Conoco, Inc., 794 F.2d 992 (5th Cir.1986); Meloy v. Conoco, Inc., 496 So.2d 340 (La.1986). Chevron asked the district court to defer its decision on SEE's motion for summary judgment pending the response by the Louisiana Supreme Court. The district court demurred and granted SEE's motion. No reasons were assigned. Chevron appealed and moved for a stay of proceedings on appeal pending word from the Louisiana Supreme Court. We stayed our hand until we received and acted on the response to our certification. Meloy v. Conoco, Inc., 504 So.2d 833 (La.1987); Meloy v. Conoco, Inc., 817 F.2d 275 (5th Cir.1987).
 
 
 4
 After the parties filed their briefs in this appeal, and pending trial of Tanksley's claims, Chevron settled with Tanksley. SEE declined to participate in the settlement. We directed the parties to supplement the record on appeal and invited briefing and argument on the effect of the settlement on Chevron's appeal of the indemnity issue. Chevron maintains that the district court acted prematurely and that, consistent with Meloy, we should remand for a trial on the issue of its fault.
 
 Analysis
 
 5
 We agree with Chevron that in Meloy the Louisiana Supreme Court made the determination of fault by the court central to the application of the anti-indemnity bar of the Oilfield Indemnity Act. But we do not read their explication, our application, or our subsequent decision in Melancon v. Amoco Production Co., 834 F.2d 1238 (5th Cir.1988), as mandating a remand for the requested determination of fault.
 
 
 6
 In its response to our certified questions the Louisiana Supreme Court recognized the limiting effect of the Oilfield Indemnity Act on indemnity agreements between oil companies and oilfield contractors.
 
 
 7
 The Act only prohibits indemnity for cost of defense where there is "negligence or fault (strict liability) on the part of the indemnitee." The Act does not apply where the indemnitee is not negligent or at fault. An agreement providing for cost of defense in the event of a meritless suit against the indemnitee is outside the scope of the Act. Accordingly, the indemnitor's obligation for cost of defense cannot be determined until there has been a judicial finding that the indemnitee is liable or that the charges against it were baseless. Whether an oil company (indemnitee) is free from fault and thus outside the scope of the Act can only be determined after trial on the merits.[11] If it is established at trial that there is no "negligence or fault (strict liability) on the part of the indemnitee," the Act does not prohibit indemnification for cost of defense.
 
 
 8
 504 So.2d at 839. This instruction by the Louisiana Supreme Court is manifestly clear. "Whether an oil company (indemnitee) is free from fault and thus outside the scope of the Act can only be determined after trial on the merits." Id. It is in the practical application that difficulties arise, such as in our recent Melancon case, in which there could not be a trial court determination of fault, and the case here presented, in which there could have been a fault determination but where none will be forthcoming because of the settlement.
 
 
 9
 In Melancon, we were called upon to apply the Louisiana Supreme Court's teachings in Meloy to a situation in which the court legally could not determine the fault issue. Melancon, an injured oilfield worker, sued Amoco, the platform owner, for work-related injuries. Amoco filed a third-party complaint against its subcontractor, the employer of the injured workman, under an indemnification provision in the oilfield contract. The court found that Melancon had become a borrowed employee of Amoco. As a consequence, his only remedy against Amoco was for compensation benefits under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. Secs. 901 et seq. The court dismissed both the worker's ex delicto demands against Amoco and the third-party indemnification demands.
 
 
 10
 We affirmed the ruling as to the employee's exclusive remedy under the compensation act, but we reversed on the issue of indemnity, holding that since, as a matter of law, there could be no determination of fault, the Oilfield Indemnity Act did not nullify the indemnity agreement.
 
 
 11
 Chevron understandably argues that this same result should appertain here, and that we should remand to the district court for a determination of its fault or negligence as a predicate for the decision whether its indemnity agreement with SEE is abrogated by the Oilfield Indemnity Act. Chevron's argument is not without merit, particularly when considered in light of the well-established doctrine favoring fair and reasonable settlements of disputes. But in light of the language of the Louisiana Oilfield Indemnity Act, as interpreted by the Louisiana Supreme Court in its response to our certified questions, we must conclude otherwise.
 
 
 12
 The essential difference between the factual scenario in Melancon and that here presented relates to the legal availability of a determination of the negligence or fault of the indemnitee. Once the court decided that Melancon was an Amoco borrowed employee, the Longshore and Harbor Workers' Act proscribed any judicial inquiry into Amoco's fault or negligence. Thus, as a matter of law, there could never be a "trial on the merits" to determine whether Amoco was "free from fault and thus outside the scope of the [Louisiana Oilfield Indemnity] Act." Meloy, 504 So.2d at 839. In that setting, we concluded that the Oilfield Indemnity Act did not annul the indemnity provision and that Amoco was entitled to recover its costs of defense of the tort suit brought by Melancon, and the costs it incurred in pressing its indemnification demands. 834 F.2d at 1248.
 
 
 13
 In the case at bar, a trial on the merits to determine Chevron's fault or negligence was not only legally possible, it was imminent and was foreclosed only by the compromise settlement with Tanksley. The parties undoubtedly reached this settlement after a careful weighing of all relevant factors and risks. For reasons it deemed sufficient, Chevron opted to forego a trial at which it would either have been found liable or exonerated. The appeal of the certainty of settlement overrode the contending appeal of the uncertainty of trial. As a consequence, because of Chevron's choice, there will be no trial on the merits of Tanksley's claims to determine whether Chevron was "free from fault and thus outside the scope of the Act." Absent such a finding, or a legal bar preventing the finding, as in Melancon, we must conclude that the Oilfield Indemnity Act nullifies, in this instance, the indemnity agreement between Chevron and SEE.
 
 
 14
 We are mindful that this resolution is in tension with the established precept that "public policy favors voluntary settlements which obviate the need for expensive and time-consuming litigation." Bass v. Phoenix Seadrill/78 Ltd., 749 F.2d 1154, 1164 (5th Cir.1985); Miller v. Republic National Life Ins. Co., 559 F.2d 426, 428 (5th Cir.1977). But we are not persuaded that this tension is likely to become an undue settlement disincentive. Regardless, we are convinced that the Louisiana statute, as interpreted by the Louisiana Supreme Court, mandates this result. Viewed in perspective, the result is not one which litigants cannot accommodate. In the future, in this type legal situation, the impact of settlement on an existing indemnity agreement need only be factored into the determination of a fair and reasonable settlement. We harbor little doubt that it will be.
 
 
 15
 For these reasons, the judgment of the district court granting SEE's motion for summary judgment and dismissing Chevron's indemnification claims is
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 The workover contract provided, in pertinent part:
 CONTRACTOR agrees: To protect, indemnify and save GULF harmless from and against all claims, demands and causes of action, suits or other litigation (including defending all causes of action, suits or other litigation, or indemnifying and holding GULF harmless from and against all costs, expenses, attorneys' fees incurred by GULF in the defense of such causes of action, suits or other litigation brought against it arising out of operations carried on hereunder) of every kind and character arising in favor of contractor or third parties, including but not limited to personnel furnished by CONTRACTOR, on account of personal injuries or death or damage to property, whether arising out of negligence on the part of GULF or otherwise, including any claim based upon the unseaworthiness of any vessel or upon any theory of strict liability, in any way occurring, incident to, or arising out of the operations carried on hereunder, and particularly, but not by way of limitation, against any loss or damage whatsoever caused by fire, explosions, or accidents of any kind during the performance of and until the completion of said work and the acceptance thereof by GULF; to protect, indemnify and save GULF harmless from any loss or damage to property, equipment, or materials owned or furnished by GULF in any way occurring, incident to or arising out of operations carried on hereunder when such loss or damage is caused by or results from the negligent act or omission of CONTRACTOR or CONTRACTOR's failure in any way to comply with the terms and provisions of this contract; except that CONTRACTOR shall not be liable for subsurface damage to reservoirs or formations; the agreements herein to indemnify and save GULF harmless are in addition to CONTRACTOR's acceptance of general liability as an independent contractor hereunder.
 CONTRACTOR shall carry at its expense, with an insurance company or companies satisfactory to GULF and authorized to do business in the State of Louisiana, the insurance coverage in amounts not less than those listed in Exhibit "D" attached hereto and made a part of this contract. GULF shall have benefit of any insurance carried by CONTRACTOR in excess of the amount stated in Exhibit "D".
 
 
 [11]
 Prior to judicial determination, it is not known whether the indemnitee is or is not at fault; therefore, the Act would prohibit a provision requiring an "up-front" defense