Arthur THOMAS

v.

AMOCO OIL COMPANY.

Civ. A. No. 88–0328.

United States District Court,
W.D. Louisiana,
Lafayette Division.

March 2, 1993.

Anthony D. Moroux, Domengeaux, Wright, et al, Lafayette, LA, for Arthur Thomas.

James E. Williams, Edmund E. Woodley, Woodley, Williams, et al, Lake Charles, LA, for Amoco Pipeline Co.

Anthony D. Moroux, pro se.

Marvin H. Olinde, Borrello & Giardina, Baton Rouge, LA, for Liberty Mut. Ins. Co.

Earl G. Pitre, Pitre, Halley & Sikich, Lake Charles, LA, for Woodson Const. Co. Inc.

## RULING

NAUMAN S. SCOTT, District Judge.

Before us is a Motion for Judgment on the Pleadings and, in the Alternative, a Motion for Summary Judgment filed by third party defendant Woodson Construction Company (Woodson). Woodson has also filed a Motion for a More Definite Statement and a Motion to Strike.

Plaintiff Arthur Thomas (not a party here) was employed by Woodson Construction Company. Amoco Pipeline Company (Amoco) hired Woodson to perform services on a land based Amoco pipeline in Texas. The pipeline connected Amoco's Texas City Refinery with its Texas Eastern Terminal and carried butane gas to and from the refinery. The pipeline, therefore, was not an oil field pipeline nor did it serve an oil field. On September 9, 1987, the pipeline leaked butane gas. A welding torch ignited the butane and the plaintiff, Thomas, was injured when the gas exploded. Thomas brought suit solely against Amoco.

Amoco brought a third party complaint against Woodson alleging that plaintiff's injury was, in fact, caused by Woodson's negligence and seeking "defense and indemnity for any amounts for which it [Amoco] may be cast, together with all expenses and attorneys' fees, by virtue of the contractual agreement executed" between Woodson and Amoco. Section X of the contract between Woodson and Amoco provides, in pertinent part:

> The Contractor [Woodson] shall indemnify and save Company [Amoco] harmless from and against any and all losses, claims, demands, liabilities, suits or actions ... for injuries ... caused by or resulting from

Theodore Michael Haik, Jr., Leon J. Minvielle, III, Haik & Minvielle, New Iberia, LA,

the negligence of the Contractor [Woodson] or any of its subcontractors or employees of either, or from, poor, improper or unworkmanlike performance of any of the work to be performed hereunder, ... and the Contractor [Woodson] agrees to reimburse Company [Amoco] for all sums which Company [Amoco] may pay or will be compelled to pay in settlement of any claim on account thereof ... except that Contractor [Woodson] assumes no liability for the sole and negligent acts of Company [Amoco], its agent, servants or employees.

Shortly before Thomas' claim was to go to trial, Thomas settled with Amoco.

In its Motion for Summary Judgment, Woodson seeks dismissal of Amoco's third party complaint alleging that (1) the workers' compensation laws of Texas and Louisiana bar Amoco's claim for contractual indemnity under each law's "exclusive" remedy provisions; and (2) both Texas and Louisiana have enacted anti-indemnity statutes which render the indemnity agreement between Amoco and Woodson void and against public policy.

## A. EXCLUSIVE REMEDY UNDER WORKERS' COMPENSATION LAW

■ We first address the choice of law issue of whether Louisiana or Texas workers' compensation law applies in this dispute. Under the rule of *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), this Court, sitting in diversity, must decide choice of law questions according to the conflicts rules of Louisiana, our forum state. LSA–C.C. art. 3515 provides that where a case involves contacts with other states, the case "is governed by the law of the state whose policies would be most seriously impaired if its law were not applied ... by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties...."

We believe that Louisiana is the only state which has an actual interest in the workers' compensation aspect of this litigation; and as a result, Louisiana's policies would be "most seriously impaired" if its laws are not applied. The Louisiana Workers' Compensation Statute was enacted to protect injured Louisiana employees as well as to prevent them from becoming a financial burden on the state because of their disabilities.[1] Although Mr. Thomas was injured in Texas, he is domiciled in Louisiana and presumably expected to return to Louisiana after completing his work for Amoco. Thus, Louisiana, not Texas would bear the social costs of his inability to work. In addition, as a Louisiana employer, Woodson had "justified expectations" in making payments to Mr. Thomas according to Louisiana's workers' compensation statutory scheme. Thus, we find that Texas' interest in enforcing its workers' compensation laws would not be "seriously impaired" by the application of Louisiana law. We hold, therefore, that Louisiana law applies to the workers' compensation aspect of this dispute.

■ Woodson contends that the "exclusive" remedy provisions contained in the Louisiana Workers' Compensation Statute voids operation of the indemnification clause. We disagree. Although it is well-settled that the exclusive remedy provision of the Workers' Compensation Act relieves an employer from the obligation to indemnify under the "tort-indemnity" theory, an obligation on the part of the employer to indemnify may be created or may arise from a contract of indemnity entered into between the employer and the party demanding indemnification.[2] The mere fact that Woodson is protected from tort liability to its employee does not abrogate or otherwise limit any contractual liability under the indemnity clause.[3] We, therefore, hold that Amoco's demand for contractual indemnity is not barred by the Louisiana Workers' Compensation statute.

1. See, *Goodman v. Hillyer, Deutsch, Edwards, Inc.*, 49 So.2d 60, 62 (La.App. 2d Cir.1950).

2. *Yocum v. City of Minden*, 566 So.2d 1082, 1087 (La.App. 2d Cir.1990).

3. *Id.*

## B. VALIDITY OF INDEMNITY AGREEMENT UNDER APPLICABLE INDEMNITY STATUTES

■ Woodson next contends that both Texas and Louisiana law render the indemnity agreement void and against public policy. Each party has briefed a comparison of the indemnity statutes found in Louisiana and Texas. Thus, we conduct another choice of law inquiry to determine which state's law applies to the Amoco–Woodson contract. We note at the outset that the parties did not execute a choice of law agreement in the contract. Therefore, we proceed according to LSA–C.C. art. 3537, which provides that the governing law is the law of the state "whose policies would be most seriously impaired if its law were not applied to that issue." The policies of each potential state are evaluated in light of:

> (1) the pertinent contacts of each state to the parties to the transaction, including the place of negotiation, formation, and performance of the contract, the location of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, or promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

We find that Louisiana has a greater interest in enforcing its anti-indemnity statute than does Texas. Thus, the policies behind Louisiana's indemnity law will be "most seriously impaired" if Louisiana law is not applied. Both states have enacted statutes in order to protect contractors (like Woodson) from the historically adhesive nature of indemnity agreements in the area of oil and gas production.[4] Woodson is a Louisiana corporation and contractor. Thus, Louisiana's interest in protecting a resident contractor is greater than Texas' interest in protecting a non-resident contractor. In contrast, Texas suffers no impairment of its interests if Louisiana law is applied. The contract was negotiated via mail and telephone conversations between Louisiana and Illinois, and was executed by Woodson in Louisiana. Texas is merely the place of performance of the contract and the location of the accident. Neither party is domiciled in Texas nor should reasonably expect the protection of the Texas indemnity statute under these circumstances. Because we find relatively little impairment of Texas' interests resulting from the application of Louisiana's anti-indemnity statute, we will analyze the validity of the indemnity agreement under Louisiana indemnity law.

■ The Louisiana Oilfield Indemnity Act [LOIA], LSA–R.S. 9:2780, provides, in pertinent part:

> B. Any provision contained in, or collateral to, or affecting an *agreement pertaining to a well* for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, ... is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages ... resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee ...

LSA–R.S. 9:2780(B) (emphasis added).

The LOIA defines the term, "agreement" pertaining to a well for oil, gas or water, to mean "any agreement ... concerning any operations related to the exploration, development, production, or transportation" of oil or gas. LSA–R.S. 9:2780(C).

In *Transcontinental Gas v. Transportation Insurance Co.*, 953 F.2d 985 (5th Cir. 1992),[5] (hereinafter *Transco* ) the Fifth Circuit recently parsed the LOIA in determining the extent to which the Act voided indemnity agreements in the natural gas pipeline context. The Court stated:

> Circuit opinion thoroughly discusses many of the cases which both parties have cited in their respective memoranda.

---

4. *See,* LSA–R.S. 9:2780 A; Tex.Civ.Pract. & Rem. Code Ann. § 127.002 (Vernon 1991).

5. We note that neither party has briefed the applicability of this case. However, the Fifth

Determining the applicability of the Act is a two-step process. First, there must be an agreement that "pertains to" an oil, gas or water well. If the contract does not pertain to a well, the inquiry ends. Only if we determine that the contract has the required nexus to a well may we proceed to the second step of the process, examination of the contract's involvement with "operations related to the exploration, development, production or transportation of oil, gas, or water," the only sensible interpretation of the statute when read as a whole, requires that those operations themselves must, first and foremost, pertain to a well. Therefore, if (but only if) the agreement pertains to a well *and* (2) is related to exploration, development, production or transportation of oil, gas, or water, will the Act invalidate any indemnity provision contained in or collateral to that agreement.[6] The Court clearly stated that the threshold issue of whether an agreement affecting a gas transportation pipeline "pertains to" a well did not lend itself to a bright-line standard, but that each case would require a fact-intensive analysis:

> [I]n each situation, there should be a reasonably determinable point at which the gas can no longer be identified with a particular well, or is so fundamentally changed in processing, commingling, or preparing it for distribution to its ultimate end user that the gas no longer "pertains to a well."[7]

The Court listed ten factors, without limitation, to assist courts in determining this point, including "details affecting the functional and geographic nexus between "a well" and the structure or facility that is the object of the agreement under scrutiny."[8]

We believe that Woodson has failed to establish sufficient factual evidence for us to conclude, as a matter of law, that the Woodson–Amoco agreement pertains to a gas well. The record before us does not indicate a sufficient nexus between "a well" and the natural gas pipeline which was the subject of the Amoco–Woodson agreement. The Amoco pipeline connects Amoco's Texas City Refinery up to the Texas Eastern Terminal, which connects other pipelines leading to butane storage caverns. The pipeline in question transports butane to and from the refinery. Based on the pipeline operations described in the record, we find that the gas cannot reasonably be "identified with a particular well."

Rather than presenting factual evidence in support of its motion, Woodson has advanced a legal argument that the LOIA should be broadly interpreted such that the Act covers "*any* agreement concerning *any* operations relating to the exploration, development, production, or transportation of oil gas or water." (emphasis added)[9] Woodson essentially argues that because the agreement concerns the "transportation" of the butane through a pipeline, the operations are covered by the LOIA. However, the *Transco* court flatly rejected such a "literal" interpretation of Section C of the Act as "simplistic," since it would "render the phrase pertaining to a well nugatory and lead to a nonsensical results in contravention of the legislature's express principles of interpretation."[10] We likewise reject Woodson's argument. Thus, because Woodson has failed to establish that its contract with Amoco "pertains to" a gas well, the LOIA is not triggered and cannot invalidate the indemnity agreement.

■ Following this interpretation of the LOIA, we also reject Woodson's argument that Amoco's prior settlement with Arthur Thomas precludes its indemnity claim. As a general matter, the LOIA voids indemnity agreements only to the extent that the con-

6. *Id.* at 991.

7. *Id.* at 994.

8. *Id.*

9. Woodson cites several authorities supporting a broad interpretation of the LOIA: *Murray v. Trunkline Gas Co.*, 544 So.2d 28 (La.App. 4th Cir.1989) (contract servicing a pipeline which transported gas directly from the well); *Copous v. ODECO Oil & Gas Co.*, 835 F.2d 115 (5th Cir.1988) (contract to renovate living quarters on a stationary production platform); *Livings v. Service Truck Lines, Inc.*, 467 So.2d 595 (La.App. 3rd Cir.1985) (contract to test inventory drill pipe at the yard).

10. 953 F.2d at 992.

tractual indemnitee is found either negligent or strictly liable.[11] Relying on the holding in *Tanksley v. Gulf Oil Corp.*, 848 F.2d 515 (5th Cir.1988), Woodson argues that Amoco's indemnity claim should be dismissed since the settlement forecloses a trial court from determining whether Amoco was negligent or strictly liable.[12] However, we believe that the *Tanksley* rule is inapplicable in this case. In *Tanksley*, the agreement in question involved workover duties on an oil drilling platform in the Gulf of Mexico, clearly "pertaining to a well" and triggering the application of the LOIA. In the present case, however, Woodson has failed to demonstrate the applicability of the LOIA. We believe the *Tanksley* rule does not bar an indemnity claim in cases where the indemnity agreement does not "pertain to" a well and the LOIA is found not to apply. Thus, the *Tanksley* rule, itself, does not bar Amoco's indemnity claim following its settlement with Mr. Thomas. Because we find that neither Louisiana's Workers' Compensation Act nor the LOIA bars Amoco's claim for contractual indemnity, we must deny Woodson's Motion for Summary Judgment and/or Judgment on the Pleadings and allow Amoco to pursue its contractual indemnity claim.

Similarly, we deny Woodson's Motion for a More Definite Statement and/or Motion to Strike. Amoco's pleading alleges that Woodson's negligence caused Mr. Thomas' injury and that, under the indemnity agreement, it is entitled to indemnity and attorney's fees. We think these allegations are stated with sufficient specificity and clarity such that Woodson is not entitled to a more definite statement.[13] We also find that the allegations are not "redundant, immaterial, impertinent, or scandalous."[14]

Accordingly, Woodson's Motion for Judgment on the Pleadings and, in the alternative, a Motion for Summary Judgment, its Motion for a More Definite Statement and its Motion to Strike are hereby DENIED.

---

11. *Meloy v. Conoco, Inc.*, 504 So.2d 833 (La. 1987).

12. The *Tanksley* court held that the LOIA nullified the indemnity agreement between a platform owner and a contractor after the owner settled with the contractor's injured employee.

13. According to Fed.R.Civ.P. 12(e), a Motion for a More Definite Statement is appropriate only when "a pleading ... is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading...."

14. Fed.R.Civ.P. 12(f).