**Russell A. GRANTHAM, Trustee of the Fee Liquidating Trust, Plaintiff,**

v.

**The J.L. MASON GROUP, et al., Defendants.**

No. 80–359 C(4).

United States District Court, E.D. Missouri.

Jan. 26, 1993.

John Quinn, Armstrong, Teasdale, Schlafly, Davis & Dicus, St. Louis, MO, for Eike Class.

David Stolze, Behr, Mantovani, McCarter & Cappiello, St. Louis, MO, for J.L. Mason Group.

Thomas Lang, Clayton, MO, for John Doe.

John Davidson, Coughlin & Davidson, Kirkwood, MO, for J.L. Mason Trust.

Alan Gerson, St. Louis, MO, for Cedar Run Properties.

Alan H. Kandel, Cordell P. Schulten, Clayton, MO, for Missouri Four Seasons, Inc.—defendant.

Michael Campbell, Clayton, MO, for First Nationwide Bank.

Richard Greenberg, Roger Herman, Rosenblum, Golderners, Silverstein & Zafft, Clayton, MO.

Daniel T. Engle, Coburn, Croft & Putzell, St. Louis, MO.

## OPINION

CAHILL, District Judge.

This class action is before the Court for a determination of whether the proposed settlement is fair, reasonable, and adequate. Fed.R.Civ.Pro. 23(e). All of the pretrial matters in this action were referred to United States Magistrate Judge David D. Noce, originally under 28 U.S.C. § 636(b) and later under 28 U.S.C. § 636(c). Because of the multiplicity of litigants in this action, the undersigned has determined that a de novo determination of the magistrate judge's orders and recommendations is appropriate. 28 U.S.C. 636(b).

The Court has carefully reviewed the record of this action, including the Report and Recommendation of Judge Noce, filed on January 7, 1993, and the Class Counsel

Committee Joint Report and Recommendation for Approval of Claims, and Exhibits A through G attached thereto, filed December 18, 1992. The Court notes that there has been no objection filed with respect to either of these reports and recommendations.

■ In evaluating the fairness of the proposed settlement, the Court and the magistrate judge have given due consideration to all of the relevant factors. The Court finds that the proposed settlement formula is fair, reasonable, and adequate to all parties and members of the classes. Absent the settlement, the members of the various classes are likely to engage in very complex, protracted, and adversarial litigation which will doubtlessly deplete the fund available for distribution.

Upon careful consideration, the Court adopts the Report and Recommendation of the magistrate judge, which was filed on January 7, 1993, and the Class Counsel Committee's Joint Report and Recommendation for Approval of Claims, which was filed on December 18, 1992. Specifically, Exhibits A through G of the Class Counsel Committee's Joint Report are approved and are incorporated herein by reference.

Further, the Court finds that there is no just cause for any delay in the entering of a final, appealable order for the distribution of the fund to the entitled claimants. The running of the period of time for appeal, and the speedy disposition of any appeal, will greatly advance the distribution of the fund to those entitled to participate in it and their enjoyment of it.

The fund should not be distributed until the conclusion of any appeal litigation or the passage of the prescribed period of time for bringing an appeal. Were the fund to be distributed and thereafter the settlement vacated or set aside, the complete reconstitution of the fund would be impossible. The accompanying Judgment orders the Clerk of the Court to await the passage of the prescribed period for appeal before paying the claims.

For the reasons set forth in the many Orders of the magistrate judge, the Court approves all previous payments from the fund for all services received by the Court from all experts, counsel, parties, and other persons. The Court readily recognizes and finds that the progress of this litigation has been tedious, because of the herculean tasks of identifying the several thousands of parcels of real estate involved in this action, of identifying the thousands of individual and organizational claimants and class members, of automating the very large amount of data necessary to make the appropriate investigations and distributions, and of enforcing the rights of the claimants in the proper disposition of their claims. Without the efforts of the parties, counsel, experts, and other persons, there would be no fund or claimants entitled to its distribution. The highly qualified experts, counsel and other persons, who were retained and appointed by the Court, were and remain necessary for the proper and successful conclusion of this litigation.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

NOCE, United States Magistrate Judge.

This class action is before the Court under Federal Rule of Civil Procedure 23(e) for a determination of whether the proposed settlement is fair, reasonable, and adequate. As part of this determination, the Court must rule on the validly of various claims by different class members or potential class members. All pretrial matters were referred to the undersigned United States Magistrate Judge originally under 28 U.S.C. § 636(b). Many status hearings have been held during the pendency of this case, at which time the undersigned was advised of issues and negotiations. The undersigned issued various Orders relating to on-going matters, which are part of the Court record. A settlement fairness hearing was held on February 12, 1992.

### I. Jurisdiction, Venue and the Parties

This class action originally was brought by plaintiff in 1980, for the recovery of federal taxes paid by Fee Fee Trunk Sewer, Inc. ("Fee Fee"). The jurisdictional ba-

sis for the action was 28 U.S.C. § 1346(a)(1). The cardinal question then before the Court was whether or not connection fees paid by developers to Fee Fee during 1976 and 1977 for connection to sewer lines were taxable as income and not deductible. The IRS had determined that they were so taxable to Fee Fee. Fee Fee, through its liquidating trustee, brought this action for a tax refund. Also, Fee Fee received permission from the Missouri Public Service Commission to charge additional connection fees to developers to offset the additional taxes, on condition that the additional fees be placed in escrow and that any tax refund would be refunded to the owners of the relevant parcels of land as of the end of 1976 and 1977.

On August 12, 1982, District Judge Clyde Cahill entered an Order that plaintiff's Motion for Partial Summary Judgment be sustained against the United States on the issue of the taxability of the connection fees. This Order determined that the plaintiff, the Trustee for the Fee Fee Liquidating Trust, was entitled to a refund of taxes from the federal government. The precise amount of the refund was a matter left open for further litigation.

After years of negotiation with the federal government over the amount of the refund, the original parties to this action entered a Consent Judgment whereby the United States of America eventually paid a refund amount of $3,072,424.63 as principal and accrued interest. Plaintiff deposited those funds, plus related monies later recovered from the State of Missouri, with this Court and the refund monies were invested to earn interest.

Thereafter, plaintiff filed a First Amended Complaint For Interpleader and Declaratory Judgment. This pleading sought to determine the appropriate recipients of the refunded monies. The defendants in that portion of the lawsuit, and the classes they represent, were: (I) The J.L. Mason Group, Inc., as the representative of the class consisting of home builders, others who had paid the connection fees, and assignees of refund monies; (II) John Doe, a fictitious representative of the class of owners of record at the end of the calendar years in which the subject connection fees were paid (either 1976 or 1977); and (III) John Smith, a fictitious representative of the class of owners at the then present time.[1] The John Smith class was ultimately represented by Dennis J. and Ann C. Eike.

During the course of the litigation, on the recommendation of the undersigned, this Court certified all three classes and determined that a class action was the appropriate action for allocating the refund monies. Plaintiff, having performed the task of obtaining the refund, was dismissed from the case.

This Court has both personal jurisdiction over all of the parties and subject matter jurisdiction over each of the claims now pending. By consent of all the parties to this action, the case was assigned to United States Magistrate Judge David D. Noce for the exercise of authority under 28 U.S.C. § 636(c).

## II. The Lawsuit

During the course of the lawsuit, the undersigned, in conjunction with counsel for the parties, explored a number of areas vital to a resolution of this matter. For instance, because the identity of the specific class members, particularly in the John Doe class and the Eike class, were unknown, and because of the length of time between the payment of the connection fees and the institution of the refund interpleader action, the Court appointed and retained a title company to investigate and to identify the specific parcels and lots of real property for which relevant connection fees were paid. The title company also reported to the Court on the titles and record owners for the subject properties. This investigation assisted the Court and the parties in determining the exact number of lots and parcels of property involved in this action, and the potential number of claimants from

1. By Order of May 15, 1990, the Court defined Class III as comprised of owners of record of the subject properties on May 15, 1990.

each class for each lot and parcel of property. The reports from the title company included a Property Locator Number ("PLN") for each lot or parcel, and this PLN has been used by the Court and counsel to identify properties and claimants.

There were compelling arguments for granting all or a part of the refund to each of the respective classes. Synopses of these arguments are contained in the notices which were mailed and published pursuant to Orders of the Court, at earlier times. The undersigned heard these arguments and, mindful of the value to all of the claimants of a reasonable and prompt settlement, the parties were urged to explore settlement options. After extensive negotiations, including discussions with the Court regarding the legal positions of each class, counsel for the three classes negotiated a settlement proposal that was presented to the Court for approval.

In November, 1991, class action notices were filed, outlining the proposed settlement and setting a hearing on the fairness of the proposed settlement on February 12, 1992. These notices were mailed to the subject property addresses and to persons or entities identified as class members of any of the three classes at other addresses that had been identified. Notice of the hearing and the proposed settlement was also published in the St. Louis Post–Dispatch and in the Suburban Journals on the weekend of January 4–5, 1992.

### III. The Settlement Proposal

On March 11, 1991, the Court preliminarily approved the Settlement Proposal set forth below. In preliminarily approving the proposed settlement, the Court in no way expressed a final opinion as to the merits of the respective classes' claims. The Settlement Proposal, recommended by the undersigned herein, consists of five settlement categories. These are as follows:

*Category 1.* This category consists of class members in three different situations: (a) people or entities who paid the connection fees *and* owned the properties at the end of the taxable years in which the connection fees were paid *and* owned the prop-

erties on May 15, 1990, in essence, being in all three classes; or (b) people or entities who paid the connection fees *and* owned the properties at the end of the taxable years in which the connection fees were paid, in essence, being members of both Class I and Class II; or (c) people or entities who paid the connection fees *and* received written assignments of the refunds which were approved by class counsel as valid, in essence, Class I members with valid assignments.

*Category 2.* This category consists of people or entities who owned the properties at the end of the calendar years in which the connection fees were paid, for which properties no written assignment of the refunds have been previously submitted by a Class I member for review and approval by the Court. These persons or entities, in essence, are Class II members with no other class membership and no assignments attached to their properties.

*Category 3.* This category consists of class members who paid the additional connection fees but did not own the subject properties on May 15, 1990, nor at the end of the calendar years in which the connection fees were paid, and who either did not submit written assignments for review or their written assignments were not approved. These persons or entities, in essence, are Class I members with no assignments supporting their claims.

*Category 4.* This category consists of people or entities who owned the properties at the end of the calendar years in which the connection fees were paid, but did not pay the connection fees; however, written assignments to Class I members of the refunds for their properties have been previously submitted and approved. These persons or entities, in essence, are Class II members whose rights to refund were assigned to Class I members.

*Category 5.* This category consists of class members who owned the properties on May 15, 1990, and are not members of any of the above settlement categories. These persons or entities, in essence, are Class III members without any other affiliation in another category. They may be

referred to herein as the "Current Owners."

Category 1 is to receive a Principal Sum (as defined below), plus simple interest on said sum calculated at the rate of 5.25% for the years 1978 through 1983, and 5.5% for the years 1974 through June of 1991. These interest rates were approved by the Missouri Public Service Commission in the *West Elm* case,[2] a separate but related case which also concerned refunds resulting from similar additional connection fees.

Category 2 is to receive a Principal Sum (as defined below) plus simple interest on said sum for the years 1978 through June of 1991 at the rate of 2.75% which is one-half of the maximum interest rate amount approved and applied in the *West Elm* case.

Category 3 is to receive 55% of a Principal Sum (as defined below) with no interest.

Category 4 is to receive 55% of a Principal Sum (as defined below) with no interest.

Category 5 is to receive 55% of a Principal Sum (as defined below) with no interest.

"Principal Sum" as that term is used for settlement purposes consists of the 1976 or 1977 principal refund for the specific property received from the State of Missouri and the 1976 or 1977 principal refunds received from the Internal Revenue Service. The total of all of the "Principal Sums" for all settlement categories is $1,308,799.71.

### IV.   Responses to the Proposal

No written objection to the general settlement proposal formula described above was received by the Court or by class counsel. No class members appeared at the February 12, 1992, fairness hearing to oppose the settlement proposal formula. Counsel for several individual class members have been present at hearings wherein the proposed settlement formula was discussed, and a number of such counsel were present at the February 12, 1992, hearing. None of these counsel have objected to the proposed settlement formula. Therefore, no objection to the proposed settlement formula having been filed or otherwise placed on the record, the undersigned recommends that the proposed settlement formula be accepted by the Court and incorporated in its final order herein.

Although there were no objections to the settlement proposal, there were objections by claimants to the settlement categories to which they were assigned, and there were objections from a number of previously unidentified class members who filed claims, mostly as Current Owners. These new claims were considered "objections" to the settlement and the Court established various procedures by which these "objections" could be resolved. These objections did not affect the validity of the settlement formula, but they did affect the administration and the payment categories of the proposed settlement. The undersigned's recommendations to the Court relating to these various objections are stated below.

### V.   Fairness of the Proposed Settlement

As set forth above, over $3 million was deposited into the registry of the Court for distribution to the appropriate parties. The Court deposited these funds in interest bearing accounts, which interest increased the size of the fund. Due to the complexity of the case, expenses were incurred after the case was filed, which expenses reduced the size of the fund. These expenses included reimbursement to the Home Builders' Association for initially prosecuting the case which led to the refund, attorneys' fees for class counsel, fees for title reports, costs for preparing, mailing and publishing the class action notices, fund administration and computer automation fees, expert witness fees, and other related expenses. Before any payments were made for any of these expenses, the undersigned received evidence, heard objections, if any, and issued orders relating to each of these expenses.

Considering all of the relevant facts, the undersigned believes, and so recommends that the Court find and conclude, that the

**2.** *In re West Elm Place Corporation,* Case No. SO–85–131, 1986 Mo. PSC LEXIS 20 (Mo.Pub. Serv.Com., filed July 11, 1986).

proposed settlement is fair, reasonable, adequate, and in the best interest of the class members. The undersigned also believes, and so recommends, that the objections and disputes among different claimants, plus additional claims that have been filed, should be resolved as described below.

█ In evaluating the settlement, the Court must take into account factors such as the absence of fraud or collusion, the likelihood of success by any class over another class at trial, the range of possible recovery, the amount of the proposed settlement, the complexity, expense and duration of the litigation, the substance and amount of opposition, and the stage of the proceedings at which settlement is achieved. *Bennett v. Behring Corporation,* 96 F.R.D. 343, 348 (S.D.Fla.1982); 3B *Moore's Federal Practice,* ¶ 23.80[4], pp. 23–488–490 (1991).

The record reflects no fraud or collusion. Class action counsel have diligently prosecuted this case for their respective classes and the undersigned has had numerous, systematic hearings to keep abreast of the different stages of the case. The likelihood of success at trial for each of the respective classes is fairly represented by the settlement formula negotiated by class counsel. Each class has meritorious arguments for its position. The settlement represents an effort to recognize the significant overlap of persons or entities who are members of more than one class, thereby having additional arguments to support their respective positions. The settlement also represents a recognition that the amount refunded exceeds the amount actually paid as connection fees by approximately $2 million.

Moreover, the underlying issue, namely the return of monies collected by the federal and state governments as taxes on the connection fees, has been pending since the mid–1970's. This lawsuit was filed in 1980, with the first eight years spent determining liability and negotiating the amount of the refund recovery. In its current state, namely the determination of the proper allocation of the refund monies, the case has been pending for more than four years. A substantial period of time has been necessary to resolve the allocation issues, because of the great difficulty in and the complexity of identifying the specific parcels of property and the specific class members, preparing and publishing appropriate notices, and negotiating the appropriate allocations to each category. Nevertheless, it is clearly in the best interests of the class members to resolve the matter now, rather than wait for a protracted trial, briefing and appeal. In addition, substantial expenses would be incurred in hiring and preparing expert witnesses and in the attorneys' fees for carrying on such a trial.

Class counsel have presented strong arguments for each class, and the underlying facts have been adequately analyzed by counsel and the undersigned. The likelihood of success at trial has been adequately considered by counsel and the undersigned.

Based on the foregoing, the undersigned believes the Court should approve the settlement as fair, reasonable, adequate and in the best interests of the classes.

## VI. Identification of Class Members

As described above, significant effort has been expended in determining the names of the members of the various classes. Because the identities of property owners in 1976 and 1977 had to be determined, as well as the identities of the Current Owners, a title company was retained to perform title searches on the subject property. Those searches, and the resulting reports, provided an important basis for the settlement negotiations and the resolution of this case.

For instance, an analysis of the identities of the members of the various classes demonstrated a significant similarity between the members of the J.L. Mason class (Class I) and the John Doe class (Class II). This similarity of class members supported the rationale for settling this matter on the basis described above.

At the same time as the settlement negotiations were proceeding, the title reports were also useful in locating the class mem-

bers for purposes of notifying them of the case and the pending settlement. In November, 1991, the Court mailed notices of the proposed settlement to persons and to addresses identified in the reports. In 1990, notices of the pendency of the class action itself were mailed, and a number of class members filed reports with the Court, which reports provided current addresses for a number of class members. These addresses were combined with the addresses from the title reports to set up a data base[3] used by the Court, class counsel, and others.

As a result of the mailed notices and the published notices, many class members filed claims. When discrepancies between the title reports, the data base, and the claim forms occurred, counsel and other representatives retained and appointed by the Court sought further clarification from claimants so that the correct claimant for the subject property could be identified. Upon the direction of the undersigned, class counsel directed further letters and requests for information to these new claimants.

As a result of all of the claim forms received, there were a large number of claimants whose names matched the reports from the title company and who did not object to the settlement category in which they were assigned.

In addition, there were a significant number of claimants, principally Current Owners, whose names did not match the report from the title company for the subject property. Counsel and others requested further information from those persons in order to determine if they were the correct Current Owners. Because the title reports were prepared in mid–1989, and because they did not always list new owners after 1988, and since the class of Current Owners was declared to be the owners of the properties on May 15, 1990, there were a number of homes and other property sold to new owners after the title reports were issued. As will be described in more detail

below, these questions were addressed by a committee formed by the Court for that purpose.

There were a smaller number of disputed claims in which the parties either appeared in court to present their case, or in which two or more parties had a disagreement over the proper claimant or the category in which each should be placed. These claims either were heard in open court, or the Court received filed objections and then the claimants subsequently settled their disputes in documents filed with the Court. The following were the results of the hearings held in which these disputes were raised.

## A. February 12, 1992 Hearing

At the hearing on February 12, 1992, there were no objections presented relating to the fairness of the settlement proposal formula or the mathematical calculations in the settlement. There were several matters raised regarding changes to the data base and to the names of the appropriate claimants. In addition, upon motion by counsel, the undersigned extended the time for claims to be filed and considered to the conclusion of the adversary or information gathering portion of the case.

For PLN 4–4–L109, Category 5, evidence was presented to the undersigned to change the claimants' names in the data base to the name of one of the claimants, Elaine Kesten, widow of Jack L. Kesten. The undersigned finds, and recommends that the Court find and approve, that Elaine Kesten is the sole and proper claimant for this property.

For PLN 10–3, PLN 5–30, and PLN 7–7, evidence was presented to the undersigned that the name of the Category 1 claimant in the Court data base should be changed to H.G.S. Design, Ltd., because H.G.S. acquired Blackhall Development. The undersigned finds, and recommends that the Court find and approve, that H.G.S. Design, Ltd., is the proper Category 1 claimant for this property.

---

3. The data base was computer automated and administered by Mr. Richard Batt and TCR Associates, a computer service firm operated by

Ms. Marcia Schechter, all of whom were appointed by the Court to perform these duties.

For PLN 8–26, evidence was presented to the undersigned that the Category 1 claimant, Missouri Four Seasons, Inc., is a liquidated corporation, and that the two living directors of the corporation asked Mr. Alan H. Kandel, attorney at law, to receive the refund check on behalf of the liquidated corporation. The undersigned finds, and recommends that the Court find and approve, that Alan H. Kandel, Esq., is to receive the Category 1 refund check on behalf of the liquidated corporation, Missouri Four Seasons, Inc.

The undersigned also heard from S.M.J. Corporation, St. Louis Federal Savings and Loan, and St. Louis Federal Service Corporation, now known as First Nationwide Bank, about a dispute over the claims for Category 1 and Category 4 for PLN 5–1–L207 and PLN 5–1. These claimants agreed to conduct discovery and investigate the facts and to try to resolve their differences.

Because the Court had received a number of claims which, if granted, would reduce or eliminate payments to other potential claimants, the undersigned directed TCR Associates to notify claimants who might suffer a detriment if another person's or entity's claim was allowed. These notices were sent by TCR.

### B. March 25, 1992 Hearing

On March 25, 1992, the Court held a hearing at which time a number of claimants appeared for the purpose of being added to the list of claimants or to change their settlement Category. The following are the findings and recommendations of the undersigned as to these particular claims.

PLN 10–24–L4 was the subject of a claim by Robert S. Wilson. Mr. Wilson presented compelling evidence that he had actually paid the connection fee increase for Lot 4, and that the listed Category 1 claimant, Shapiro Realty, had only passed through the additional fee to Mr. Wilson. As a result, the undersigned finds, and recommends that the Court find and approve, that Robert S. Wilson is entitled to the Category 1 payment for Lot 4, that his

classification for that lot should change from Category 3 to Category 1, and that Shapiro Realty is not entitled to a refund in any category for that lot. This finding does not affect Shapiro Realty's claim as a Category 1 claimant for Lots 1, 2 and 3 for PLN 10–24.

PLN 8–7 and PLN 8–21 were the subjects of a claim by DeShetler Homes to move from a Category 2 claimant to a Category 1 claimant based on the fact that DeShetler Homes actually paid the connection fee through Concord Homes and there was a contract between the parties stating that DeShetler was to receive the money from sewer refunds. Mr. Glenn Arnold testified as to the existence of such a contract and DeShetler's attorney reported that Concord Homes was in agreement with DeShetler's request. The undersigned finds, and recommends that the Court find and approve, that DeShetler Homes is entitled to be the Category 1 recipient for PLN 8–7 and PLN 8–21. Its Category 2 placement is changed and the placement of Concord Homes in Category 3 is eliminated.

PLN 5–19 and PLN 9–25 relate to a claim by Philip Klemp that he and his wife had a valid assignment for the refunds for these two properties. The Fee Fee records showed Mr. Klemp as the person who paid the connection fees, but the title reports showed that the properties were owned by others at the end of the calendar year in which the fees were paid. As a result, Mr. Klemp was placed in Category 3 as there was no record of a valid assignment. The subdivision in question is the Chalet Forest subdivision. Mr. Klemp originally had filed a claim form as a Category 3 claimant. However, upon reviewing his records, he determined that he should have filed a claim as a Category 1 claimant based upon the assignment (which was contained in an indenture for the subdivision). Upon an oral request, for good cause shown, the undersigned granted leave for Mr. Klemp to file an amended claim to represent his status as a Category 1 claimant.

Because this amended claim would cause a change in the categories of other claim-

ants, by changing them from Category 2 claimants to Category 4 claimants, counsel and the undersigned determined that appropriate notice should be given to allow the other claimants an opportunity to oppose Mr. Klemp's amended claim and the change in categories. At the direction of the undersigned, notice was given to the affected claimants. These claimants included: Flori Construction, Inc.; Dennis Flannigan; AK & L Construction, Inc.; and Philip Klemp Builders. Subsequently, at a later hearing, only Flori Construction, Inc. appeared to contest the amended claim by Mr. Klemp. At that hearing, which was held on May 22, 1992, the undersigned heard the testimony of Mr. Flori. The undersigned finds, and recommends that the Court find and approve, that after hearing all of the testimony and reviewing the indenture relating to this property, the amended claim of Mr. Klemp should be filed and Mr. Klemp's category changed from Category 3 to Category 1, and that all Category 2 claimants for PLN 5–19 and PLN 9–25, including Flori Construction, Inc., should be changed to Category 4 claimants.

PLN 4–17 is for the Westchester Retirement Property. At the hearing, representatives of the partners in that entity requested that the Court's refund checks be made payable as follows: John Neiner (⅜ths of amount); John Kilo, on behalf of himself and his brother Charles (⅛th of amount); Edward Cody (1/16th of amount); James McNab (1/16th of amount); John Moellenberg (⅛th of amount); Wallace Saunders (⅛th of amount); C.A. Astowski (⅛th of amount). The undersigned finds, and recommends that the Court find and approve, that the refund payments should be made to the persons identified in the percentages requested.

At the time of the hearing, the Court had received two objections and requests for category changes. These two matters related to PLN 4–3, lot 22 (Ray and Louise DeHart) and to PLN 9–16 (Concetta Concelli). The objections were based on requests to change categories because the claimants believed they had paid the connection fees. No one appeared at the hearing in support of these objections, and the undersigned finds and recommends that the Court overrule these objections for lack of appropriate and necessary evidentiary support.

Finally, at the hearing held on March 25, 1992, the undersigned established a committee, consisting of the three class counsel, to expedite the orderly review of claim forms and supporting documents filed by persons or entities whose names did not appear on the title reports or in the data base accumulated by the Court. The committee was assigned the task of reviewing the filed claim forms, together with available verification documentation, and of reporting to the undersigned whether names should be changed based on the submitted documentation. The principal group of persons involved were Current Owners who did not appear on the title reports, but who had documents to support their claims as Current Owners.

The committee met on a systematic basis, reviewed title reports, reviewed additional verification documentation, reviewed claim forms and conferred with Richard Batt and Marcia Schechter, experts who were retained and appointed to assist the Court in this matter, regarding data base information and all other sources of information deemed appropriate and pertinent.

## C. March 26, 1992 Hearing

On March 26, 1992, the undersigned held a hearing relating to additional claims and name changes for the subject properties.

At that time, upon the request of the J.L. Mason of Missouri Inc. Collateral Trust, the undersigned heard evidence directed to the request that refunds payable to Chesterfield Realty, the J.L. Mason Group, and Mason–Cassilly, all be paid to the J.L. Mason of Missouri Inc. Collateral Trust. Counsel for these parties and the Collateral Trust appeared and offered evidence demonstrating that there had been mergers and assignments between and among these parties. The undersigned finds, and recommends that the Court find and approve, that payment be made to J.L. Mason of Missouri Inc. Collateral Trust and that pay-

ments should not be made to Chesterfield Realty, the J.L. Mason Group, and Mason–Cassilly, of the refunds for Category 1 for the following PLN's: 4–4–L100; 4–19; 4–4–L198; 8–8; 8–8–B; 8–29–L265; 8–29–L114; 9–23–B; 9–3–L303; 4–4–L100; and 9–3–L308.

PLN 7–13–L66 relates to a claim by John Dennis Vescovo, as an individual, in place of Dennis Vescovo Construction, Inc., the name appearing on the records on file with the Court. Upon a showing by Mr. Vescovo, with supporting documents, that the corporation was no longer in business and that he was the sole shareholder of the corporation throughout its existence, the undersigned finds, and recommends that the Court find and approve, that the refund for PLN 7–13–L66 should be paid to John Dennis Vescovo individually and not to Dennis Vescovo Construction, Inc.

PLN 7–10 relates to a request to change a filed claim form from the name of Woodson Development Company to Woodson Holding Company. The Court records had reflected that the claimant for Category 3 was the holding company, but the claim form as filed was in the name of the development company. The undersigned finds, and recommends that the Court find and approve that the claim form should be changed to the name of Woodson Holding Company as claimant.

For PLN 5–2, Category 1, Woodson Development Company offered an assignment which would allow a portion of the refund in that category to be paid to Woodson Development Company. The assignment was signed by KFC National Management and would permit Woodson to receive $3300 of the $6,240 paid as a connection fee. The undersigned directed counsel to inform KFC National Management of this assignment as it would reduce the designated refund to KFC by the ratio of 3300/6240. Not having heard from KFC National Management that it objects, the undersigned finds, and recommends that the Court find and approve, that the Category 1 claim for PLN 5–2 be divided between Woodson Development Company and KFC National Management in the ratio of

3300/6240 to Woodson Development and 2940/6240 to KFC.

For PLN 10–5–L421, evidence was presented to the undersigned, and the undersigned finds, and recommends that the Court find and approve, that Richard and Karen Range are the Current Owners and the Category 5 claimants for said property.

For PLN 11–9–5, evidence was presented to the undersigned, and the undersigned finds, and recommends that the Court find and approve, that the name of the Category 5 claimant is St. Louis Westgate Associates, L.P., for said property.

For PLN 7–28–L1605, evidence was presented to the undersigned, and the undersigned finds, and recommends that the Court find and approve, that Francis G. Moser is the Current Owner and the Category 5 claimant for said property.

For PLN 5–28 and PLN 10–10, evidence was presented to the undersigned, and the undersigned finds, and recommends that the Court find and approve, that the claim form for Category 1 should be changed to the name of Westco Real Estate Co., the name that appeared in the title reports. This claim change reflects a correction for an incorrect name listed on the claim form as filed.

For PLN 5–20, evidence was presented to the undersigned, and the undersigned finds, and recommends that the Court find and approve, that the claim for Category 1 be paid to William B. Mueller, who was a partner in the originally-named payor. Mr. Mueller recounted efforts to locate his former partner, Mr. Frischkorn, as well as his knowledge of the divorce of Mr. Frischkorn from his former wife and debts Mr. Frischkorn allegedly owes his former wife. The claim money is to be paid to Mr. Mueller on behalf of himself and his former partner.

For PLN 8–12–L65, evidence was presented to the undersigned, and the undersigned finds, and recommends that the Court find and approve, that the Current Owners and category 5 claimants are Daniel and Rose Sloven for the subject property.

### D. May 22, 1992 Hearing

At the May 22, 1992 hearing, the undersigned heard various matters and received evidence from several claimants.

As described above, Ronald J. Flori, on behalf of Flori Construction Co., appeared to contest the claim of Philip Klemp, described above, that his category be changed to make him the Category 1 claimant for PLN 5–19 and PLN 9–25. Mr. Flori was of the opinion and testified that Flori Construction Co. would have paid the increased connection fees indirectly to Fee Fee through the prices charged for the lots as they were being developed, and that Mr. Klemp's request should be denied. Mr. Flori had been designated as a trustee on the indenture agreement that served as the basis for Mr. Klemp's claim to a Category 1 payment, and Mr. Flori's son had signed the trust document on his behalf. Mr. Flori ratified that signature. The undersigned finds, and recommends that the Court find and approve, that Philip and Audrey Klemp, his wife, are the Category 1 recipients of the refunds for PLN 5–19 and 9–25, that their Category 3 claim be eliminated, and that all Category 2 claimants for that property, including Flori Construction Co., be changed to Category 4 claimants.

The undersigned also approved a settlement between S.M.J. Corporation and First Nationwide Bank on their dispute relating to PLN 5–1. The undersigned finds, and recommends that the Court find and approve, that the settlement between those two entities is fair and that the refunds should be paid out in accordance therewith.

Finally, for PLN 10–16 and PLN 6–5, Mr. James Ashwell appeared for Coldwell Banker, the successor in interest to Ira E. Berry Co., to notify the Court that he had just received notice of the case due to the successor situation. The undersigned allowed Mr. Ashwell additional time to review the case, to decide the status of any claim that Coldwell Banker might make, and to file appropriate documents with the Court. Subsequently upon submission of appropriate information, the undersigned recommends approval of the payouts listed for said property in Exhibit A to the Class Counsel's Joint Report and Recommendation, filed December 18, 1992, which exhibit is incorporated herein by reference.

As stated above, based on the evidence presented during the hearings described above and at other times, and based on an analysis of the legal arguments made by counsel for the various parties, the undersigned believes that the proposed settlement is fair, reasonable, adequate and in the best interests of the classes. The undersigned further believes that the changes to the Categories, as described above, are fair, reasonable, adequate, and are supported by evidence. The undersigned recommends that the Court approve the settlement and approve the Category changes described herein. All of these changes and determinations are reflected in Exhibits A through G to the Class Counsel Committee Joint Report and Recommendation for Approval of Claims, described below, filed December 18, 1992, subject to the approval of the Court.

### VII. Report of the Committee and Approved Exhibits

On December 18, 1992, the Class Counsel Committee filed its Joint Report and Recommendation for Approval of Claims. This report includes Exhibits A to G which are computer data base compilations of all of the specific recommendations for fund distributions, or for distribution denials, for the several groupings or listings of claims. These compilations were made, under the supervision of the Court and of class counsel, by Richard Batt and Marcia Schechter of TCR Associates. Exhibits A through G, attached to the December 18 joint report are fully approved by the undersigned and are incorporated into this Report and Recommendation by reference as though attached hereto.

Exhibit A is a listing of all claims which the committee recommends be approved by the Court. This exhibit includes all recommended name changes, all court-approved changes, and all other recommended changes to claims.

Exhibit B is a listing of all property by categories, for which no claim has been

filed. The committee recommends that no refund payments be made for these properties.

Exhibit C is a listing of court-approved changes. A column captioned *"Reason"* sets forth the date on which a settlement agreement was filed, or a court order was entered.

Exhibit D is a listing of all name changes recommended for approval by the committee. Page 1 of Exhibit D sets forth abbreviations used in the *"Reason"* column, which generally refer to the most significant document or verification reviewed by the committee in making its recommendation.

Exhibit E is a listing of miscellaneous changes recommended by the committee for court approval. These are changes, other than court-approved changes and name changes, that the committee recommends to the Court for the reasons set forth in the column captioned *"Reason"*.

Exhibit F is a listing of unresolved claims. These claims are primarily those claims that were filed by claimants whose names do not appear in the data base, who received a letter from class counsel or from TCR Associates requesting additional verification documentation, and who failed to provide such additional verification documentation.

Exhibit G is a listing of claims by claimants who are in no way entitled to share in any of the proceeds for various reasons, including, for example, claimants whose claims related to the payment of a connection fee made prior to July 8, 1976, or the claimants who did not own the property on a date relevant for participation in the settlement. A number of these claimants received letters from one or more class counsel advising them that they had no claim.

The committee made all of these recommendations based upon standards and criteria established by the Court during the many hearings and conferences held in this action. Based upon the committee's diligent efforts and the underlying bases for its recommendations, the undersigned adopted the committee's recommended changes and ordered the data base changed accordingly, subject to the Court's final approval. Exhibits A through G reflect those changes and determinations.

## VIII. Attorneys' Fees and Costs

Throughout the course of this case, counsel for the three classes have greatly assisted the Court and, as a result, all of the parties by their actions. They have cooperated with each other and with the Court in all matters, while being properly adversarial in representing the interests of their respective classes. Had they not performed their work as they did, it is doubtful that the class members would be able to receive their refunds in the near future and it is likely that the fund's resources available for distribution to claimants would have been reduced.

Because of the work required, the Court retained various experts to advise the undersigned regarding several legal issues and to assist in data collecting, data collation, and administration of the numerous communications from and to class members. On a quarterly basis, these experts and class counsel submitted bills for their services, which the undersigned reviewed and questioned. Others were given opportunities to oppose these bills. The undersigned has, upon review and consideration of the fee requests, authorized payments to counsel and others during the pendency of this matter.

The undersigned has found that the time expended by the experts and by class counsel has been necessary and that the approved fees were fair and reasonable and supported by the record. The expenses incurred were reasonable and necessary.

## IX. Allocation of Unclaimed Funds

The proposed settlement will pay out as much money as possible to the claimants and will minimize administrative costs and legal fees. While it is hoped that all funds will be paid out after all the refund checks are cashed and all the fees are paid, it is anticipated that a portion of the fund will remain available for charitable distribution, as set forth in the proposed class action

settlement. That distribution is as follows: After settlement payments have been made to class members for settlement under the various categories and after all administrative costs, attorneys' fees, experts' fees, and all other expenses have been paid out, the remaining funds, if any, shall be paid out to an entity or entities which relate to utility service and/or governmental services and/or which provide a critical service to disadvantaged Missouri citizens in the St. Louis Metropolitan Area, as directed by order of the Court. The actual charitable distribution of the residual portion of the fund will be the subject of a future Report and Recommendation of the undersigned after appropriate future proceedings.

## X. Recommendation

For the reasons set forth above, the undersigned recommends as follows:

1. that the proposed settlement as set forth in the Notice of Proposed Settlement of Class Action and Fairness Hearing, approved by Court Order filed October 28, 1991, be finally approved by the Court pursuant to Federal Rule of Civil Procedure 23(e);

2. that the refund claims for the categories set forth in the Proposed Settlement should be approved or disapproved, and paid or not paid, as set forth in Exhibits A through G attached to Class Counsel's Joint Report and Recommendations, filed December 18, 1992, which exhibits are incorporated herein by reference as though attached hereto;

3. that payment to the defendant class members pursuant to Exhibits A through G attached to Class Counsel's Joint Report and Recommendations, filed December 18, 1992, shall forever release and discharge the defendants and all other parties and counsel in this action from any liability to any class member, or a successor or assign of any class member, who filed a claim in this action and from any liability to any class member who failed to file a claim in this action;

4. that the Court determine that there is not just reason for delay and enter final, appealable judgment with respect to paragraphs 1, 2, and 3, next above, under Federal Rule of Civil Procedure 54(b) as soon as appropriate so that distribution of the refund monies may be accomplished as soon as reasonably possible;

5. that the experts' and class counsel's fees for all work done after the last ordered fee payment, after proper review, should be paid from the fund to the extent approved by the Court; and

6. that this Court shall retain jurisdiction to resolve any further matters that arise in this action.

Notice: All parties, class members, claimants, and any person or entity with standing shall have ten days from this date to file written objections to this Report and Recommendation and to Class Counsel's Joint Report and Recommendations for Approval of Claims, filed December 19, 1992, and the exhibits attached thereto. The failure to file said written objection(s) shall be a waiver of the right to appeal any related order or ruling of the District Court.

Signed this 7th day of January, 1993.